UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NOVA WINES, INC.,

           Plaintiff,

  v.

ADLER FELS WINERY LLC, SAAL BROWN, INC. dba PACIFIC LICENSING, GARY SAAL, TOM KELLY STUDIOS, INC. and DOES 1 THROUGH 10,

           Defendants.
_____/

AND RELATED COUNTERCLAIMS.
_____/

No. C 06-6149 MHP

**MEMORANDUM & ORDER**
**Re: Plaintiff's Motion to Stay Counterclaims and Compel Arbitration**

On September 29, 2006, plaintiff Nova Wines, Inc. ("Nova" or "plaintiff") brought this action against defendants Adler Fels Winery LLC ("Adler Fels"), Saal Brown, Inc. dba Pacific Licensing ("Pacific Licensing"), Gary Saal ("Saal"), and Tom Kelly Studios, Inc. ("TKS") (collectively "defendants") asserting claims for trademark infringement, trade dress infringement, unfair competition and passing off. Defendants filed their answer and counterclaims on November 2, 2006. Now before the court is plaintiff's motion to compel arbitration and stay defendants' counterclaims. Having considered the parties' arguments and for the reasons stated below, the court enters the following memorandum and order.

BACKGROUND

The underlying facts of this case are set forth in this court's previous Order on Plaintiff's Motion for Preliminary Injunction. See Nova Wines, Inc. v. Adler Fels Winery LLC, No. C 06-

06149 MHP, 2006 WL 3498574, at *1–*3 (N.D. Cal. Dec. 4, 2004) (Patel, J.).  The relevant facts related to the instant motion are set forth below.

Nova and TKS entered into a Merchandise License Agreement ("the License Agreement") in May 2004, whereby TKS granted Nova an exclusive license to use certain photographs of Marilyn Monroe on its wine bottles.  Howard Dec., Exh. A.  The License Agreement contained an arbitration clause that provided, in relevant part:

> Except as specifically set forth in this Agreement, any and all disputes, controversies and claims arising out of or relating to this Agreement, or concerning the respective rights or obligations hereunder, of the parties hereto shall be settled and determined by arbitration in Santa Rosa or San Francisco, California, in accordance with and pursuant to the then existing rules of the American Arbitration Association.  The arbitrators shall have the power to award specific performance or injunctive relief and reasonable attorneys' fees and expenses to any party in such arbitration power.

Howard Dec., Exh. A ¶ 21(b).  The relationship between Nova and TKS collapsed in Summer 2005, giving rise to a number of disputes between the parties.  In February 2006, Nova commenced arbitration proceedings against TKS and Pacific Licensing, TKS's agent, before the American Arbitration Association ("AAA"), asserting damages based on fraud and concealment.  Howard Dec. ¶ 5.  The following month, TKS brought a counterclaim alleging breach of contract and copyright infringement, asserting that Nova continued to use TKS's copyrighted images after the termination of the License Agreement.  Howard Dec., Exh. B at 3.  On November 1, 2006 TKS filed an amended answering statement and counterclaims with AAA, asserting counterclaims for breach of contract "and other wrongs" without explicitly stating a claim for copyright infringement.  Richardson Dec., Exh. A.

Meanwhile, in April 2005 TKS had filed a declaratory relief action against Marilyn Monroe LLC and CMG Worldwide Inc. ("the Monroe Entities") in the United States District Court for the Central District of California, alleging that the Monroe Entities wrongfully claimed rights of publicity, association and sponsorship in the name and image of Marilyn Monroe, and that the Monroe Entities asserted these rights against third parties to prevent those third parties from contracting with TKS.  Howard Dec., Exh. C ¶¶ 17–20.  As part of the Central District action, TKS also asserted rights allegedly obtained under model releases from Marilyn Monroe that prevented the

2

Monroe Entities from asserting any rights that would interfere with TKS's right to exploit its photographs. Id. TKS asserted claims for unfair competition, unfair trade practices, interference with actual and prospective economic advantage, imposition of a constructive trust, false advertising, and false designation. Id. The Central District action was later consolidated with CMG Worldwide, Inc. et al. v. The Milton Greene Archives, et al., No. CV 05-02200-MMM (Mcx). The consolidated action is still pending in the Central District of California.[1]

Finally, in September 2006 Nova filed this action asserting claims against Adler Fels, TKS, Pacific Licensing and Saal for trademark infringement, false designation, unfair competition, trademark dilution, and intentional interference with economic advantage. Defendants filed their answer and counterclaims on November 2, 2006 (one day after filing their amended answer and counterclaims with AAA), naming Robert and Donna Holder ("the Holders") and the Monroe Entities as counter-defendants. Defendants brought the following counterclaims:

I. Copyright Infringement against Nova and the Holders
II. Trademark Infringement against Nova and the Holders
III. False Designation against Nova and the Holders
IV. Unfair Competition against Nova and the Holders
V. Common Law Unfair Competition against all counter-defendants
VI. Unfair Business Practices under Section 17200 against all counter-defendants
VII. Interference with Actual and Prospective Economic Advantage against all counter-defendants
VIII. Cancellation of Registered Mark against Marilyn Monroe LLC
IX. Declaratory Relief against all counter-defendants
X. Constructive Trust against all defendants

On December 4, 2006 this court granted Nova's motion for preliminary injunction, focusing exclusively on trade dress and declining to reach much of the parties' trademark allegations. This court likewise substantially declined to address defendants' claims related to copyrights, contractual rights, and rights of publicity, holding that such arguments likely had little bearing on Nova's trade

dress claim.  Defendants have appealed this court's preliminary injunction order, and the appeal is currently pending in the Ninth Circuit.

Nova and the Holders now move to compel arbitration and stay defendants' counterclaims.  The Monroe Entities have not joined this motion.

LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, requires federal courts to enforce arbitration agreements and to stay any litigation that contravenes such agreements.  Arbitration is a matter of contact, and the court cannot require a party to arbitrate a dispute unless the party has agreed to do so.  United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960).  Accordingly, the court's role under the Act is limited to (1) determining whether a valid agreement to arbitrate exists and, if it does, (2) deciding whether the agreement encompasses the dispute at issue.  9 U.S.C. § 4; Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 719–20 (9th Cir.1999). On the other hand, a district court retains the inherent power to stay litigation "to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for the litigants."  Landis v. North Am. Co., 299 U.S. 248, 254 (1936).  In exercising this power, the court must balance the hardship and inequity of allowing the action to proceed with "the ossification of rights which attends inordinate delay."  Yong v. INS, 208 F.3d 1116, 1119 (9th Cir.2000) (internal quotations omitted).

DISCUSSION

It is undisputed that there is a valid arbitration agreement between Nova and TKS.  The court's inquiry, therefore, focuses entirely on whether the agreement encompasses defendants' counterclaims.  A threshold issue, however, is whether Nova waived its rights to compel arbitration by bringing this action in federal court.

4

I.     Waiver

"A party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." Fisher v. A.G. Becker Paribas Inc., 791 F.2d 691, 694 (9th Cir. 1986). Defendants assert that, by naming TKS as a defendant in its action against Adler Fels rather than seeking remedies in arbitration, Nova acted inconsistently with its arbitration rights and waived its ability to compel arbitration of any counterclaims asserted by TKS. Nova responds that there was no right to compel arbitration at the time it filed its suit because the subject matter of Nova's complaint is outside the License Agreement. The threshold inquiry, therefore, is whether Nova's claims against TKS could have been brought in arbitration. To answer that question the court must determine whether the arbitration provision encompasses Nova's causes of action against TKS.[2]

Courts have interpreted the phrase "arising out of or relating to [this Agreement]" in the context of arbitration provisions as encompassing "tort, as well as contractual, liabilities so long as the tort claims have their roots in the relationship between the parties which was created by the contract." Tate v. Saratoga Sav. & Loan Ass'n, 216 Cal. App. 3d 843, 855 (1989) (internal quotations omitted). The Ninth Circuit has held that similar language is "broad and far reaching." Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1131 (9th Cir. 2000) (interpreting the phrase "Any dispute, controversy or claim arising out of or relating to the validity, construction, enforceability or performance of this Agreement"); Britton v. Co-op Banking Group, 4 F.3d 742, 745 (9th Cir. 1993) (holding that such language is "routinely used in many securities and labor agreements to secure the broadest possible arbitration coverage"). Other courts have held that this language is coterminous with the phrase "arising in connection with." YP Corp. v. Sitrick and Co., Inc., No. CV050769PHXSRB, 2005 WL 3334326, at *6 (D. Ariz. Dec. 8, 2005). The Ninth Circuit has interpreted the latter phrase to cover "every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." Simula,, 175 F.3d at 721. The Fifth Circuit recently considered the phrase "arising out of or relating to" at length, and concluded that such language covers actions where "the tort or breach in question was an

5

immediate, foreseeable result of the performance of contractual duties." Telecom Italia, SPA v. Wholesale Telecom Corp., 248 F.3d 1109, 1116 (11th Cir. 2001).

Nova clearly could not have brought an arbitration action against Adler Fels, there being no arbitration agreement between these two parties. As for its claims against TKS, although Nova's trademark claims involve the subject matter of the License Agreement—TKS's photographs of Marilyn Monroe—the rights that Nova asserts are wholly independent of the contract. Nova's purported right to prevent TKS from licensing its images to other wineries stems not from Nova's agreement with TKS, but from Nova's assertion that it owns trademark and trade dress interests in its use of the images. Nova's rights in this regard would exist with or without the License Agreement. Furthermore, TKS's licensing activities involving third parties have nothing to do with its License Agreement with Nova. Accordingly, Nova could not have brought its trademark and unfair competition claims against TKS in arbitration. The fact that Nova did assert its arbitration rights by initiating arbitration on those claims arising out of the agreement well before filing this action further persuades the court that Nova did not intend to waive its right to compel arbitration by subsequently bringing these claims in federal court. The court therefore finds that Nova has not waived its right to compel arbitration.

II.  Defendants' Counterclaims

As with the waiver inquiry, the question of whether to compel arbitration focuses on whether defendants' counterclaims are encompassed by the arbitration agreement. The court will consider each species of counterclaim separately.

A.  Copyright Counterclaim (Count I)

Nova asserts that defendants' copyright infringement counterclaim must be stayed because defendants' copyright infringement claim arises out of the License Agreement. TKS originally asserted copyright infringement in the arbitration context, bringing its copyright claim in this court only after being named as a defendant in Nova's complaint. TKS's own conduct, therefore, indicates that the copyright claim is arbitrable. Furthermore, Nova's alleged copyright infringement

6

consists of using the specific images that were the subject of the License Agreement. Nova began using these images when it was granted permission to do so under the License Agreement. The dispute over Nova's continued use of these specific images therefore has its genesis in the License Agreement, and defendants' copyright counterclaims are subject to arbitration.

### B. Trademark Counterclaims (Counts II–IV)

Defendants claim trademark protection in the two Marilyn Monroe images that it licensed to Nova, as well as the term "Velvet Collection" as a derivative of "Red Velvet Collection." Answer ¶¶ 28–29. TKS alleges that it owns common law trademark rights to "Red Velvet Collection," and that one of the poses within the collection ("Pose No. 2") is a federally registered trademark. Answer ¶ 101. TKS's trademark interests in Pose No. 2 and "Red Velvet Collection" therefore exist independently of the License Agreement. However, TKS's asserted trademark interest in another of the Red Velvet Collection poses ("Pose No. 1"), appears to be based on the theory that any trademark interest that arose out of Nova's use of Pose No. 1 inured to TKS under the terms of the contract. See License Agreement ¶ 7; Counterclaim ¶¶ 27–29. Accordingly, the trademark claim with respect to Pose No. 1 arises directly from the contract. At the very least, therefore, defendants' trademark claims related to Pose No. 1 are subject to the arbitration provision.

Defendants' trademark claims are further complicated by their challenge to the copyright license that Nova obtained from Playboy. Defendants' counterclaim alleges that Nova obtained a license only to the *copyright* in Pose No. 1, and that this license does not entitle Nova to infringe TKS's trademark and trade dress interests in the commercial use of the pose.[3] Nova characterizes this as TKS claiming that Nova's Playboy license is improper because Nova agreed not to use the images after the termination of the agreement. Although the interplay between trademark and copyright interests does not necessarily depend upon the License Agreement, defendants are claiming that Nova's rights in this arena are limited by its obligations under the contract, further implicating the arbitration provision.

Finally, as with defendants' copyright claims, Nova's alleged trademark infringement is based on its continued use of the specific images and words that were the subject of the License

7

1 Agreement.  Given these considerations, defendants' trademark claims arise from or relate to the
2 License Agreement and are subject to arbitration.

### C. Counts V–X

Nova asserts that the remaining claims should be stayed because they are duplicative of defendants' claims in the Central District action.  A review of Counts V–X in defendants' counterclaims in this action and their claims in the Central District action reveals several parallels.  Defendants' separate claims for tortious interference, for example, are strikingly similar.  Counterclaim at ¶¶ 73–77; Howard Dec., Exh C ¶¶ 58–62.  The wording of the Declaratory Relief claims are also quite similar, though the Declaratory Relief counterclaim is directed at Nova only.  Counterclaim ¶¶ 84–87; ¶¶ 28–31.

Defendants' response to this argument is cursory.  First, defendants claim that Nova and the Holders lack standing to move to stay claims against the Monroe Entities, because they do not represent those entities.  In addition, defendants assert, without elaboration, that the claims at issue here are different from the claims at issue in the Central District action because they "are focused on the fact that NOVA and the other third-party defendants are claiming trademark rights."

After oral argument on this motion, the Monroe Entities filed a separate motion to stay counterclaims V–X.  In light of defendants' argument regarding Nova's standing, but without reaching the merits of that argument, the court will hold Nova's motion in abeyance as to Counts V–X pending the resolution of the Monroe Entities' motion.

CONCLUSION

For the reasons stated above, the court GRANTS IN PART plaintiff's motion to stay counterclaims and compel arbitration. Plaintiff's motion is GRANTED with respect to Counts I–IV and held in abeyance with respect to Counts V–X.

IT IS SO ORDERED.

Dated:     January 25, 2007        _____
                                    MARILYN HALL PATEL
                                    District Judge
                                    United States District Court
                                    Northern District of California

**ENDNOTES**

1. In addition to this action, the Central District action, and the arbitration proceeding, there are separate cases pending in the Southern District of New York and elsewhere.

2. As a preliminary matter, the court notes that the *remedies* Nova is seeking against TKS were all available under the arbitration agreement, assuming that the agreement reached the substance of Nova's claims. Paragraph 21(b) of the License Agreement explicitly empowers the arbitrators to grant injunctive relief. If the subject matter of Nova's lawsuit falls within the arbitration clause, therefore, Nova cannot claim that civil litigation was necessary to obtain the appropriate remedies.

3. Oddly, TKS has set forth the mirror image of this argument in its own defense, alleging that its own copyrights in the Red Velvet Collection images entitle it to license the images notwithstanding any trademark or trade dress interests in the Marilyn Monroe images.